IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SYNOPSYS, INC., et al.,

    Plaintiffs,

v.

MENTOR GRAPHICS CORPORATION,

    Defendant.
_____/

No. C 12-5025 MMC

**ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE**

Before the Court is defendant Mentor Graphics Corporation's ("Mentor Graphics") Motion to Transfer, filed January 11, 2013. Plaintiffs EVE-USA, Inc. and Emulation and Verification Engineering, S.A. (collectively, "EVE") and Synopsys, Inc. ("Synopsys") have filed opposition, to which Mentor Graphics has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

### BACKGROUND

All parties to the instant action design and manufacture emulators; emulators are specialized, million-dollar machines purchased by semiconductor makers and "capable of

---

[1] By order filed February 12, 2013, the Court deemed the matter appropriate for decision on the parties' respective filings and vacated the hearing scheduled for February 15, 2013.

1  reproducing the operation of a circuit design through steps including mapping the circuit
2  design onto hardware." (See Mot. at 2:24-26, 14:4-5.) On September 27, 2012, plaintiffs
3  EVE and Synopsys[2] (collectively, "plaintiffs") filed a complaint for declaratory relief, seeking
4  an order that U.S. Patent Nos. 5,649,176 ("the '176 Patent"), 6,009,531 ("the '531 Patent"),
5  and 6,240,376 ("the '376 Patent") are invalid and that plaintiff's ZeBu line of products
6  ("ZeBu Products") do not infringe said patents. (See Compl. ¶¶ 17-32.)

Prior to plaintiffs' initiation of the instant action, Mentor Graphics, in 2006, filed suit against EVE in the District of Oregon ("2006 Oregon Action"), alleging in its First Amended Complaint that EVE's ZeBu verification system infringed the same three patents as are at issue in the instant action. (See Sapoznikow Decl. Ex. 2.). On November 30, 2006, a settlement conference was held, after which an entry was placed in the case docket, which minute entry states:

> Case settles. The clerk is directed to enter a 60 day order of dismissal. The court shall retain jurisdiction over the settlement agreement.

(See Sapoznikow Decl. Ex. 4.) Additionally, that same date, the Clerk of Court both signed and filed a document titled "Order of Dismissal," by which the action was "dismissed with prejudice, subject to either party reopening the case in the event of failure to consummate final settlement within sixty (60) days." (See Mentor Graphics Corp. v. EVE-USA, Inc, 06-341-AA, D. Or., Doc. No. 63.) The Order of Dismissal contains no reference to retention of jurisdiction.

Thereafter, in December 2006, Mentor Graphics and EVE signed a Settlement Agreement and Mutual Release ("Settlement Agreement"), by which "[e]ach [p]arty mutually release[d] the other [p]arties on claims in the [2006] Oregon Action, including all claims in Mentor's proposed Second Amended Complaint and EVE's proposed counterclaims." (See Offen-Brown Decl. Ex. 3 ¶ 3.) EVE's proposed counterclaims

---

[2] On September 27, 2012 Synopsys entered into an agreement to acquire EVE (see Compl. ¶ 13), which agreement was finalized on October 4, 2012 (see Larzul Decl., Doc. No. 47, ¶ 3).

2

included counterclaims for declaratory judgment of invalidity and noninfringement of the above-referenced three patents at issue in the instant action. (See Offen-Brown Decl. Ex. 3 ¶ 18.)  The Settlement Agreement further provided:  [ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ] (See Offen-Brown Decl. Ex. 3 ¶ 4.)  Additionally, the Settlement Agreement contained the following clause:

> **Enforced According to Terms.**  The Parties intend this Agreement to be enforced according to its terms.  To the extent that any dispute arises as to such enforcement, the Parties agree that the United States District Court for the District of Oregon shall retain jurisdiction over this matter and shall have sole authority to resolve disputes.

(See Offen-Brown Decl. Ex. 3 ¶ 7.)

Several years later, Mentor Graphics, in 2010, filed another action in the District of Oregon, alleging EVE's ZeBu products infringed U.S. Patent No. 6,876,962 ("2010 Oregon Action") (see Sapoznikow Decl. Ex. 5), and, in 2012, Mentor Graphics filed a third lawsuit, alleging the ZeBu Products infringed U.S. Patent No. 6,947,882 ("2012 Oregon Action") (see id. Ex. 12), which suit was consolidated with the 2010 action ("Consolidated Oregon Action") (see id. Ex. 14).

## DISCUSSION

### I. Proper Venue:  Minute Order and Settlement Agreement

Mentor Graphics, relying on both the above-discussed minute order and the Settlement Agreement, argues each independently serves to confer upon the District of Oregon exclusive jurisdiction over the instant action.  The Court addresses each such document in turn.

Ordinarily, a federal court lacks jurisdiction over a suit for breach of a settlement agreement, as such suits ordinarily involve breach of contract claims exclusively within the jurisdiction of the state courts.  See Kokkonen v. Guardian Life Ins. Col, 511 U.S. 375, 381-82 (1994). "[I]f the parties agree," however, see id., a federal court can create "ancillary jurisdiction" to enforce a settlement agreement by either including in its order of dismissal a "separate provision (such as a provision 'retaining jurisdiction' over the settlement

agreement) or by incorporating the terms of the settlement agreement in the order," see Hagestad v. Tragesser, 49 F.3d 1430, 1433 (9th Cir. 1995). Where a court retains jurisdiction to enforce a settlement agreement, that court's jurisdiction over such enforcement is exclusive. See Flanagan v. Arnaiz, 143 F.3d 540, 545 (9th Cir. 1998) ("The context of the retention of jurisdiction, a provision for future enforcement of a settlement order, implies that the retention was meant to be exclusive.").[3]

Here, plaintiffs, at the outset, disagree that the minute order serves to retain the Oregon court's jurisdiction to any extent, as the Order of Dismissal filed thereafter contains, as noted, no reference to such retention. See O'Connor v. Colvin, 70 F.3d 530, 532 (9th Cir. 1995) (holding "even a district court's expressed intention to retain jurisdiction is insufficient to confer jurisdiction if that intention is not expressed in the order of dismissal"). Assuming, arguendo, the minute order expresses an immediate retention of jurisdiction by the court and not simply an intent to do so at a future time, the Court next turns to the scope of such retention.

As noted, the minute order states the Oregon court "shall retain jurisdiction over the settlement agreement." (See Sapoznikow Decl. Ex. 4.) As discussed above, the purpose of such an order by a federal court is to provide such court with jurisdiction to enforce a settlement agreement resolving a case pending before such court, which jurisdiction the court otherwise would not have. See Flanagan, 143 F.3d at 545 (noting retention of jurisdiction allows district court to "interpret and apply its own judgment to the future conduct contemplated by the judgment").

Consistent therewith, the settlement agreement, as noted, provides:

> **Enforced According to Terms.** The Parties intend this Agreement to be enforced according to its terms. To the extent that any dispute arises as to such enforcement, the Parties agree that the United States District Court for the District of Oregon shall retain jurisdiction over this matter and shall have sole authority to resolve disputes.

---

[3] The Flanagan Court held open the possibility that "in some circumstances, the words, context, or subsequent order of the federal court might show that retention of jurisdiction was not intended to be exclusive." Flanagan, 143 F.3d at 545.

4

1  (See Offen-Brown Decl. Ex. 3 ¶ 7) (emphasis added); Kokkonen, 511 U.S. at 381-82
2  (requiring parties' agreement to federal court's retention of jurisdiction); see also N.
3  California Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034, 1037
4  (9th Cir. 1995) (citing as example of language providing exclusive jurisdiction contract's use
5  of word "only" before chosen forum).  Mentor Graphics' argument that the subject clause is
6  broad enough to cover "any matter relating to the . . . Settlement Agreement" (see Mot. at
7  2:2) is not persuasive.  The phrase "any disputes," on which Mentor Graphics relies (see
8  Reply at 4:10-13), must be read in the context of the clause as a whole, which, as quoted
9  above, begins with the heading "Enforced According to Terms" and includes the phrase "to
10 the extent that any dispute arises as to such enforcement."  (See Offen Brown decl. Ex. 3
11 ¶ 7 (emphasis added); see also Doe 1 v. AOL LLC, 552 F.3d 1077, 1081 (9th Cir. 2009)
12 (noting forum selection clause is to be interpreted under "general principles for interpreting
13 contracts").  Accordingly, the Court next turns to the question of whether resolution of the
14 instant action by the Oregon court would constitute "enforcement."
15         The ordinary meaning of enforcement is "[t]he act or process of compelling
16 compliance with a law, mandate, command, decree, or agreement."  See Black's Law
17 Dictionary (9th ed. 2009).  Typically, the means for compelling compliance with a
18 settlement agreement are a suit for breach of contract, a motion to enforce compliance with
19 its terms, and/or a request for injunctive relief.  See, e.g., Arata v. Nu Skin Int'l, Inc., 96
20 F.3d 1265, 1267-68 (9th Cir. 1996) (addressing district court's jurisdiction to hear motion to
21 enforce settlement agreement, by which defendant sought order barring plaintiff from
22 pursuing in another district claims that arguably had been released by settlement
23 agreement).
24         Here, the Settlement Agreement entered in the 2006 Oregon Action is raised as an
25 affirmative defense to plaintiffs' claims.  (See Answer ¶¶ 42-46; see also Mot. at 7:8-13
26 ([ ████████████████████████████████████
27 ████████████████████████████████ ].)  Irrespective of how that
28

5

issue is resolved, such resolution will not result in an order compelling plaintiffs to take any action. Put another way, a defense is not enforcement. Had the parties, by their Settlement Agreement, wished to provide the District of Oregon with exclusive venue over the instant action, they could have used language broad enough to do so. See, e.g., Gen. Protecht Group, Inc. v. Leviton Mfg. Co., Inc., 651 F.3d 1355, 1358-59 (Fed. Cir. 2011) (holding forum selection clause in settlement agreement, which covered "[a]ny dispute between the Parties relating to or arising out of [the settlement agreement]," applied to new infringement action in which defendant asserted settlement agreement provided it with implied license).

In sum, as the instant lawsuit falls neither within the scope of the Oregon court's retention of jurisdiction nor the parties' agreement as to exclusive jurisdiction, venue is proper in this district.

**II. Transfer of Venue**

In the alternative, Mentor Graphics moves to transfer the case pursuant to 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404.

As a threshold matter, the moving party must show that the transferee forum is one in which the action might have been brought. See Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960). The moving party then must demonstrate that a transfer of venue would promote the convenience of parties and witnesses and the interests of justice. See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). There is no dispute that the action could have been brought in the District of Oregon. The Court thus turns to the remaining considerations.

Section 1404(b) provides district courts with the discretion to "adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and

fairness." See Stewart, 487 U.S. at 29 (internal quotation and citation omitted). "[I]n its determination whether transfer is appropriate in a particular case," a district court must "weigh multiple factors" affecting the convenience of the forum, which, in addition to the convenience of the witnesses, include: (1) "the state that is most familiar with the governing law," (2) "the plaintiff's choice of forum," (3) "the respective parties' contacts with the forum," (4) "the contacts relating to the plaintiff's cause of action in the chosen forum," (5) "the differences in the costs of litigation in the two forums," (6) "the availability of compulsory process to compel attendance of unwilling non-party witnesses," and (7) "the ease of access to sources of proof." See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000). The district court also "must weigh in the balance . . . those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice,'" see Stewart, 487 U.S. at 32, "which includes judicial economy," see Regents of the University of California v. Eli Lilly & Co., 119 F.3d 1559, 1565 (Fed. Cir.1997).

**A. Convenience**

    **1. Convenience of Witnesses**

The Court considers the convenience of party and non-party witnesses, giving more weight to the convenience of non-party witnesses. See Saleh v. Titan Corp., 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005) (noting "the convenience of non-party witnesses is a more important factor than the convenience of party witnesses").

Plaintiffs and Mentor Graphics both assert, in general terms, the likely party witnesses include employees residing in, respectively, the Northern District of California and the District of Oregon. (See Opp'n at 9:17-18 ("Several likely party witnesses are employees of Synopsys or EVE-USA and reside in this district."); Reply at 24-25 ("The Mentor Graphics employees likely to be called as witnesses in this Action reside in . . .

Oregon.").)[4]

As to non-party witnesses, plaintiffs point to Alain Raynaud, a co-inventor of the '376 patent, who lives in the Northern District of California. (See Lindlaw Decl. Ex. D). Plaintiffs also provide a list of fifteen additional non-party witnesses residing in the Northern District, who, according to plaintiffs, are co-inventors of prior art[5] and who, plaintiffs assert, "are likely to have information relevant to . . . the invalidity of the patents in suit." (See Opp'n at 9:25-26, 10-11.) Plaintiffs provide no further elaboration as to how such witnesses' testimony would be relevant or necessary at trial, and, as defendant points out, it appears unlikely those witnesses would be needed, even if a claim of invalidity is based on any such prior art.

Accordingly, this factor weighs only slightly against transfer.

### 2. State most familiar with governing law

Although the districts under consideration are equally familiar with federal patent law, the Oregon court has considerably more familiarity with Oregon contract law, which governs the interpretation of the Settlement Agreement. See Botefur v. City of Eagle Point, 7 F.3d 152, 156 (9th Cir. 1993) (holding "interpretation of a settlement agreement is governed by principles of state contract law").

Accordingly, this factor weighs in favor of transfer.

### 3. Plaintiff's Choice of Forum

The plaintiff's choice of forum is normally entitled to substantial deference. See Decker Coal Co., 805 F.2d at 843. In patent actions, however, "[s]uch a choice is accorded little deference where the center of the accused activity is outside the chosen forum." See Kannar v. Alticor, Inc., 2009 WL 975426 at *4 (N.D. Cal. Apr. 9, 2009). "[T]he center of the accused activity is the district in which the defendant is alleged to have developed, tested,

---

[4] Additionally, Mentor Graphics has identified by name one of plaintiffs' employees who resides in Oregon. (See Offen-Brown Decl. Ex. 29 at 1-2.)

[5] An additional two of such co-inventors reside in Oregon. (See Offen-Brown Decl. Ex. 29.)

8

researched, produced, marketed, and made sales decisions concerning the accused product." Id.

Mentor Graphics argues the center of accused activity is in France, where the ZeBu Products were designed and developed (see Wall Decl. Ex. 31 at 19:10-24), and, consequently, that plaintiff's choice of forum is entitled to no deference.[6] Plaintiffs, on the other hand, argue the center of accused activity is in the instant forum, as research and development work is conducted on the ZeBu products in Northern California and marketing and sales activity primarily takes place there. (See Larzul Decl. ¶ 5) As Mentor Graphics points out, however, research and development on the ZeBu system is continuing in France, as well as in India, and sales activity is conducted in Oregon and other districts outside the instant forum. (See Wall Decl. Ex. 34 at 19:23-25 (noting EVE employed salesman in Oregon who worked with Intel, its largest purchaser); Burns Decl. ¶¶ 6-7 (describing negotiation of sales-related agreements with Intel personnel in Eastern District of California and in District of Arizona); Wall Decl. Ex. 32 (invoices reflecting sales of ZeBu Products to Intel's Oregon office).)

Based on the parties' respective showings, the Court finds the Northern District of California, although a district in which accused activity is conducted, is not the center of accused activity, and consequently, that plaintiffs' choice of forum is entitled to some, but not great, deference. See Sorensen v. Daimler Chrysler AG, 2003 WL 1888866 (N.D. Cal. Apr. 11, 2003) (finding plaintiff's choice of forum entitled to little deference where center of activity was outside forum).

---

[6] Mentor Graphics also argues plaintiffs' choice of forum is entitled to no deference because the instant action is an "anticipatory filing" and thus "justification exists for departing from the first-filed rule." (See Mot. at 19:2-9); see also Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 95 (9th Cir. 1982) (noting "first to file" rule "permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district"); Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 628 (9th Cir. 1991) (listing "anticipatory suit" among exceptions to first-to-file rule). Mentor Graphics has cited to no case, however, suggesting a court may decline to hear a case as "anticipatory" where no parallel action has been filed thereafter by the other party.

Accordingly, this factor weighs slightly against transfer.

### 4. Parties' Contacts with the Forum

All parties to the instant action have significant contacts with this forum and also with the proposed transferee forum. Mentor Graphics' maintains headquarters in the Silicon Valley, but its worldwide headquarters are in Oregon. (See Lindlaw Decl. Ex. A; Selosse Decl. ¶ 5.) Synopsys is headquartered in Mountain View, California, but maintains a campus in Oregon. (See Compl. ¶ 1; Offen-Brown Decl. Ex. 28.) EVE-USA's principal place of business is in San Jose, California, but EVE has a field application engineer who lives in Oregon and provides support for EVE's products sold to Intel, one of EVE's largest customers (see Wall Decl. Ex. 31 at 30:25-31:1; 41:3-6). Further, for almost two years, EVE employed a salesman who worked with Intel in Oregon. (See Wall Decl. Ex. 34 at 19:23-25.)

Accordingly, this factor weighs neither in favor of nor against transfer.

### 5. Contacts Relating to Plaintiff's Cause of Action in the Chosen Forum

As discussed above, the parties have contacts with both Oregon and the Northern District of California relating to the subject claims of infringement. As noted, the ZeBu Products are primarily designed in France. Development of the ZeBu products, however, does take place in the Northern District as well, and plaintiffs' contacts with their clients through marketing and sales take place in both forums under consideration.

Accordingly, this factor weighs slightly against transfer.

### 6. Costs of Litigation

As discussed above, there are multiple cases currently pending in the District of Oregon that concern the same products and technology at issue in the instant case. In all likelihood, those cases and the instant case could be consolidated, thereby reducing the cost of duplicative discovery, technology tutorials, and claim construction hearings. The parties have already exchanged substantial discovery in Oregon relevant to the instant action, including materials regarding hardware and software related to the accused ZeBu

1 products.  (See Offen-Brown Decl. ¶ 3.)  Further, as discussed below, discovery will be
2 needed from France, and the parties have already expended in the Consolidated Oregon
3 Action considerable resources in obtaining permission to conduct discovery in France.  The
4 requested transfer would obviate the need for duplication of those efforts.  Plaintiffs, noting
5 their witnesses from France could use plaintiffs' offices in this forum, argue the cost of
6 litigation nonetheless would be reduced if the instant litigation remains here.  (See Opp'n at
7 12:9-11.)  As discussed, however, Synopsys also maintains offices in Oregon, and plaintiffs
8 have not explained why its witnesses could not use those Oregon offices to equal
9 advantage.
10       Accordingly, this factor weighs in favor of transfer.

### 7. Availability of Compulsory Process

12       As noted, plaintiffs have identified a co-inventor of the '376 patent and fifteen co-
13 inventors of asserted prior art as non-party witnesses residing in this district.  It is
14 undisputed that the Oregon court lacks authority to subpoena them to appear at a trial in
15 Oregon.  See Fed. R. Civ. P. 45(c)(3)(A)(ii).  Plaintiffs do not assert, however, that Alain
16 Raynaud, said co-inventor, is unwilling to travel to Oregon, and, as discussed above,
17 plaintiffs have not shown the co-inventors of prior art will be needed.  See Sorensen, e.g.,
18 2003 WL 1888866 at *4 (finding seventh Jones factor weighed in favor of neither party
19 where neither "assert[ed] that any non-party witness is unwilling to travel").
20       Accordingly, this factor weighs neither in favor of nor against transfer.

### 8. Ease of Access to Sources of Proof

22       "In patent infringement cases, the bulk of the relevant evidence usually comes from
23 the accused infringer[;] [c]onsequently, the place where the defendant's documents are
24 kept weighs in favor of transfer to that location."  In re Genentech, Inc., 566 F.3d 1338,
25 1345 (Fed. Cir. 2009).  Although the accused infringers in this declaratory relief action
26 maintain much of their paperwork in California, (see Opp'n at 12:8), there is a substantial
27 overlap between the discovery needed for the instant action and the discovery needed for
28

the Consolidated Oregon Action, which discovery either has been or will be produced in Oregon.

Accordingly, this factor, weighs only slightly against transfer.

**B. Interest of Justice**

As discussed above, the convenience factors weigh slightly against transfer. As the federal circuit has recognized, however, "[c]onsideration of the interest of justice, which includes judicial economy, may be determinative [of] a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." See Regents of the University of California, 119 F.3d at 1565 (internal quotation and citation omitted). For the reasons set forth below, the Court finds this factor weighs significantly in favor of transferring the instant action.

As noted, the claims of infringement at issue in the instant action and the claims of infringement at issue in the Consolidated Oregon Action are based on the same line of products. (See Sapoznikow Decl. Ex. 5 ¶ 26; id. Ex. 12 ¶ 22; Compl. ¶ 16.) The District of Oregon has already familiarized itself with issues common to both the Oregon actions and the instant action, in that it has presided over a technology tutorial in which the general structure and operation of emulators was explained in detail, has conducted a claim construction hearing, and has construed the claims of one of the two patents at issue before it pertaining to emulators. (See Sapoznikow Decl. Ex. 1.)

Plaintiffs assert there is little overlap in what the judge or jury will need to understand in the Oregon and instant actions, as the patents here, according to plaintiffs, relate to software that "modifies the original circuit design" whereas the patents in the Oregon action relate to "the emulation system as a whole" or "a specific circuit detail." (See Opp'n at 13:3-7.)[7] The Court is not persuaded.

---

[7] Plaintiffs also point to an earlier case heard in this district, in 2002, in which a now-retired district judge construed terms of the '176 Patent. (See Offen-Brown Decl. Ex. 25.) Plaintiffs contend such prior litigation weighs against transfer. The Court disagrees. See Micron Tech., Inc. v. Mosaid Technologies, Inc., 518 F.3d 897, 905 (Fed. Cir. 2008) (holding fact that Eastern District of Texas had "heard cases involving some of the same

12

There is no dispute that emulators involve complex technology. An understanding of the way in which the system as a whole works and/or an understanding of its individual circuits will be of considerable assistance to the Oregon court with respect to its understanding of the software that modifies the design of that system, see CSR Tech., Inc. v. Bandspeed, Inc., 2012 WL 1150863 (D. Ariz. Apr. 5, 2012) (finding "the efforts expended by the [transferee court] to become familiar with the technology at issue weighs decisively in favor of transfer"), and if the instant action is consolidated in Oregon, there is the potential additional benefit of trying the case to one as opposed to multiple juries. See Alere Med., Inc. v. Health Hero Network, Inc., 2007 WL 4351019 at *1-2 (N.D. Cal. Dec. 12, 2007) (finding interest of justice favored transfer; noting although original forum more convenient for a number of witnesses, question was "not simply whether *this* action would be more conveniently litigated in Illinois than California, but whether it would be more convenient to litigate the California and Illinois actions separately or in a coordinated fashion") (emphasis in original). As one district court has observed, where, as here, two actions share "common technology and products, common parties, and overlapping issues of infringement and validity[,] having all the patents before a single judge will obviate the need for duplicative tutorials and evidence, and will facilitate global settlement." See id.

Further weighing in favor of transfer to the District of Oregon is the parties' need to conduct discovery in France, given that much of the relevant evidence is located there. (See Selosse Decl. ¶ 4; Sapoznikow Decl. ¶ 4.) In the Consolidated Oregon Action, the French Ministry of Justice, after denying the parties' first request, ultimately granted their second request for a Commissioner to oversee discovery in France pursuant to Chapter II of the Hague Convention on the Taking of Evidence Abroad in Civil or Comercial Matters of March 18, 1980. (See Sapoznikow Decl. ¶ 4.) If the instant action were transferred to the District of Oregon and consolidated with the Oregon cases, or even if discovery were

---

patents" as were at issue in California action did not weigh in favor of transfer as "the record did not show any ongoing litigation requiring consolidation").

coordinated in that district, the need to duplicate such efforts would be obviated.

In sum, transfer would reduce the time, energy, and money it will take to litigate the instant action, to the benefit of both the court and the parties. See Wald v. Bank of Am. Corp., 856 F. Supp. 2d 545, 550 (E.D.N.Y. 2012) (noting "courts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy").

Accordingly, the interest of justice weighs heavily in favor of transfer.

**C. Summary of Relevant Factors**

Having considered and weighed all factors bearing on the question of convenience and the interest of justice, the Court finds the former are close to evenly balanced but that the latter are of sufficient weight to tip the balance decidedly in favor of transfer. See Regents of the Univ. of California, 119 F.3d at 1565 (holding district court "did not abuse its discretion by transferring the case after affording determinative weight to the consideration of judicial economy").

## CONCLUSION

For the reasons stated above, the Motion to Transfer to the District of Oregon is hereby GRANTED.

**IT IS SO ORDERED.**

Dated: April 3, 2013

MAXINE M. CHESNEY
United States District Judge